**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SENECA-CAYUGA TRIBE OF OKLAHOMA,  ) | |
| ) | |
| Plaintiff,                       ) | |
| ) | |
| vs.                                       ) | |
| ) | Case No. 06-CV-394-GKF-TLW |
| DREW EDMONDSON as Attorney General of   ) | |
| the State of Oklahoma, and BANK OF     ) | |
| OKLAHOMA, as escrow agent,              ) | |
| ) | |
| Defendants.                     ) | |
| ) | |
| ) | |

**OPINION AND ORDER**

This matter comes before the court on the defendant Attorney General's Motion to

Dismiss Plaintiff's Second Amended Complaint. [Doc. No. 69].  For the reasons set forth below,

the motion is denied.

**I.  Background/Procedural History**

This lawsuit arises from a dispute between the Seneca-Cayuga Tribe of Oklahoma and

the State of Oklahoma regarding state economic regulation of tobacco.  In 1988, multiple states

entered into a Master Settlement Agreement ("MSA") with various tobacco manufacturers.  As

one of those states, Oklahoma passed qualifying statutes to supplement the MSA and regulate

Non-Participating Manufacturers ("NPMs").  Among the qualifying statutes are the Oklahoma

Prevention of Youth Access to Tobacco Act ("Escrow Statute"), 37 O.S. §600.21 *et seq.* and the

Master Settlement Agreement Complementary Act  ("Complementary Act"), 68 O.S. §360.1 *et*

*seq.* (collectively "Qualifying Statutes").  The Qualifying Statutes require that NPMs deposit

funds in a qualified escrow account.  37 O.S. §600.23.  The amount each NPM must deposit

depends on the units of tobacco products sold in the state by the NPM.  The escrow funds are

held by a federally-chartered financial institution.

The Seneca-Cayuga Tribe ("Tribe") entered into an escrow agreement with Wachovia Bank, National Association ("Escrow Agent") in May 2004. [Doc. No. 69, Ex. A]. The Tribe signed a Successor Escrow Agent Indemnification Agreement on April 5, 2006. [*Id.,* Ex. B]. Seneca-Cayuga Tobacco Company ("Unincorporated Enterprise") made some escrow payments but informed the AG in a letter dated July 29, 2005, of its objection to the payment of escrow deposits and stated that all such deposits would be made "under protest and with all rights reserved." [Doc. No. 21, Ex. 3A]. The Unincorporated Enterprise was dissolved, and the Seneca-Cayuga Tribal Corporation ("Tribal Corporation"), incorporated on June 10, 2006, holds all assets and liabilities of the Unincorporated Enterprise by agreement. [Doc. No. 29, ¶2].

The Tribe and Tribal Corporation filed a First Amended Complaint for Declaratory and Injunctive Relief in this case on August 8, 2006. [Doc. No. 29].   In the First Amended Complaint, they challenged the enforceability  of the Escrow Statute and the Master Settlement Agreement Complementary Act against them, on the basis of tribal sovereign immunity. [*Id.*] The Attorney General filed a Motion to Dismiss alleging the court lacked subject matter jurisdiction of the case under Fed.R.Civ.P. 12(b)(6). [Doc. No. 50]  The court granted the Attorney General's Motion to Dismiss, dismissing all claims of the Tribe, Tribal Corporation and the Unincorporated Enterprise. [Doc. No. 49].  In so doing, the court ruled plaintiffs lacked standing to challenge the statutes. [*Id.,* pp. 12-13].   Subsequently, the court entered an order modifying the earlier dismissal order. [Doc. No. 65].   The court found the earlier order had not addressed the Tribe's standing to assert a claim for disgorgement of escrow funds under the theory of sovereign immunity.   The court found the Tribe *does* have standing to assert the

disgorgement claim and directed the Clerk to reopen the case as to the Tribe's claim for

disgorgement. [*Id.* at p. 3].

On November 7, 2007, the Tribe filed a Second Amended Complaint against the

Attorney General and Bank of Oklahoma, the successor escrow agent. [Doc. No. 68].   The Tribe

asserted one count for declaratory judgment, setting forth the following requests in its prayer for

relief:

> WHEREFORE, the Tribe requests, that this Court enter judgment pursuant to
> 28 U.S.C. §2201 declaring that: the Defendant Edmondson has no legal right
> to enforce the Oklahoma Qualifying Statutes, including the Escrow Statute,
> against the Tribe; Okla. Stat. Tit. 37 §600.22 *et seq.,* or the MSACA, Okla.
> Stat. Tit. 68 §360.1 *et seq.*; that Defendant Edmondson has no legal right to
> require compliance with the Qualifying Statutes as a condition of inclusion of
> the Tribe and their brands on the Oklahoma Directory of Certified Tobacco
> Manufacturers, and order the release to the Tribe from the Escrow Account
> at the Bank of Oklahoma all deposits for sales of Tribal tobacco products in
> Oklahoma; declaring that the Defendant has no authority to enforce the
> Qualifying Statutes in connection with the Tribe's tobacco sales to other
> federally recognized Indian Nations, regardless of their locations; and providing
> such other and further relief as is just and proper.

[*Id.,* p.8][1] The Attorney General subsequently  filed a Motion to Dismiss the Second Amended

Complaint. [Doc. No. 69].

---

[1]The Attorney General asserts the Tribe's claim for relief far exceeds the limited scope of
the court's order modifying its earlier dismissal of the action to allow the Tribe to pursue a claim
for disgorgement of funds from the escrow account.  In its Memorandum in Opposition to
Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, the Tribe acknowledged
the request for inclusion on the Oklahoma Directory of Certified Tobacco Products
Manufacturers was improperly included in its prayer for relief and stated it would voluntarily
strike that language from the Second Amended Complaint.  This leaves the request for
declaratory judgment that the qualifying statutes violate the Tribe's sovereign immunity and the
request for disgorgement.  Inasmuch as the request for disgorgement is premised on the claim
that the qualifying statutes violate the Tribe's sovereign immunity, the court finds the remaining
claims do not go beyond the scope of its previous order.

## II.  Defendant's Motion to Dismiss

The Attorney General contends a forum selection clause contained in the escrow

agreement deprives the court of both personal and subject matter jurisdiction over the Tribe's

disgorgement claim.

### A.  Escrow Agreement and Subsequent Agreements

The May 2004 Escrow Agreement between the Tribe and Wachovia ("Escrow Agent")

provided for the Tribe's tender of funds to the Escrow Agent  for deposit into a Qualified Escrow

Fund pursuant to the NPM statutes of each Beneficiary State. [Doc. 69, Ex. A, §3(a)].  The

Beneficiary States are entitled to enforce the terms of the Escrow Agreement. [*Id.,* Ex. A, §10].

The provisions of the Escrow Agreement are binding upon and inure to the benefit of the parties

and their respective successors. [*Id.*] Section 3(f) of the Escrow Agreement provides that escrow

funds shall be released only under the following circumstances:  First, funds are released to pay a

judgment or settlement on any released claim brought against the Tribe by the Beneficiary State

or any releasing party located in the state.  Second, funds are released to the extent that the

amount the Tribe was required to place into the escrow account was greater than that required by

the Master Settlement Agreement.  Third, to the extent funds are not released pursuant to the

above two circumstances, the funds are released and revert back to the Tribe 25 years after the

date on which they were placed in escrow. [*Id.,* Ex. A, §3(f)].

Section 19 of the Escrow Agreement provides in pertinent part:

**Resolution of Disputes.**

In the event of any disagreement resulting in adverse claim or demands being made
in connection with the subject matter of this Escrow Agreement, the Escrow Agent
may, at its option, refuse to comply with any claim or demands on it, or refuse to
take any other action hereunder, so long as the disagreement continues, and in such

4

event, the Escrow Agent shall not be or become liable in any way to any person or entity for its failure or refusal to act

* * * *

In addition to the foregoing remedies, the Escrow Agent is hereby authorized in the event of any such disagreement, to petition any state court of competent jurisdiction located in the capitol city of the applicable Beneficiary State, or such other city as may be agreed to in writing by the applicable Beneficiary State, for instructions or to interplead the funds or assets so held into such court.  For the limited purpose of resolving these disputes or disagreements arising under Section 19 of this Agreement or resolving lawsuits brought by Beneficiary States to enforce this Escrow Agreement (but not for purposes of resolving lawsuits brought by one or more Beneficiary States to enforce NPM Statutes other than on behalf of a Releasing Party), the Tribe grants a limited waiver of its sovereign immunity, but solely with respect to amounts that are held in or previously have been held in the applicable Beneficiary State's sub-account *and the undersigned parties agree to the jurisdiction of any state court of competent jurisdiction located in the capitol city of the applicable Beneficiary State, or such other city as may be agreed to in writing by the applicable Beneficiary State over their persons,* waive personal service of process, and agree that service of process by certified or registered mail, return receipt requested, to the addresses set forth in Section 13 shall constitute adequate service.  The Tribe agrees that upon final adjudication on such petition or interpleader action, the Escrow Agent and its servants, agents, directors, employees and officers will be relieved of further liability.

[*Id.,* Ex. A, §10] (emphasis added).

On April 5, 2006 the Tribe entered into a "Successor Escrow Agent Indemnification Agreement" with Bank of Oklahoma, N.A. ("BOK") replacing Wachovia as the Escrow Agent. [*Id.,* Ex. B].  The agreement provides in pertinent part:

The undersigned parties agree that all disputes, claims and controversies between there [*sic*], whether individual, joint, or class in nature, arising from the Escrow Agreement and any other agreements, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association, upon request of either party.

* * * *

Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning the Escrow Agreement and any

5

> other agreements, including any claim to rescind, reform, or otherwise modify any agreement relating to the Escrow Agreement and any other agreements, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party.  Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction.  Nothing in the Escrow Agreement and any other agreements shall preclude any party from seeking equitable relief from a court of competent jurisdiction.

[*Id.,* Ex. B, §2].  On July 19, 2006, the Tribe and BOK executed a supplement to the Successor

Agreement, which states:

> Notwithstanding the foregoing, the Tribe, the Seneca-Cayuga Tobacco Company, and their successors, assigns, and affiliates, may seek judicial relief from any court of competent jurisdiction related to state tobacco escrow statutes, including any actions seeking release or return of escrowed funds, dissolution of the escrow, and declaratory judgment, in which BOK may be named as a defendant, without resorting to arbitration, so long as such actions do not allege any misconduct by BOK as Escrow Agent or subject BOK to any duties or liabilities beyond those set forth in the Escrow Agreement.

[Doc. No. 84].

The Attorney General alleges the forum selection clause in the original agreement

deprives the court of both personal and subject matter jurisdiction.  Alternatively, he alleges that

even absent a forum selection clause, the release of funds currently held in the escrow account is

a contractual dispute over which this court has no subject matter jurisdiction.  The Tribe claims

the forum selection clause was vitiated by the subsequent successor and supplement to successor

agreements, and contends the court has subject matter jurisdiction of its claim under 28 U.S.C.

§§1331 and 1362 because the matter arises under the Constitution, laws, or treaties of the United

States.

### B.  Analysis

Federal courts are courts of limited jurisdiction and the Tribe, as the party seeking to

invoke federal jurisdiction, bears the burden of proving such jurisdiction is proper.  *Southway v.*

6

*Central Bank of Nigeria,* 328 F.3d 1267, 1274 (10th Cir. 2003).  A court lacking jurisdiction

cannot render judgment but must dismiss the case at any stage of the proceedings in which it

becomes apparent that jurisdiction is lacking.  *Basso v. Utah Power & Light Co.,* 495 F.2d 906,

909 (10th Cir. 1974).

Forum selection clauses are frequently classified as either mandatory or permissive.

*Excell, Inc. v. Sterling Boiler & Mechanical, Inc.,* 106 F.3d 318, 321 (10th Cir. 1997).

Mandatory forum selection clauses contain "clear language showing that jurisdiction is

appropriate only in the designated forum." *Id.* (citations omitted).  In contrast, permissive forum

selection clauses authorize jurisdiction in a designated forum but do not prohibit litigation

elsewhere.  *Id.*  Mandatory forum selection provisions are *prima facie* valid and should be

enforced unless enforcement is shown by the resisting party to be unreasonable under the

circumstances.  *Milk 'n' More, Inc. v. Beavert,* 963 F.2d 1342, 1347 (10th Cir. 1992).

Section 19 of the Escrow Agreement between the Tribe and Wachovia Bank states, "the

undersigned parties agree to the jurisdiction of any state court of competent jurisdiction located

in the capitol city of the applicable Beneficiary State, or such other city as may be agreed to in

writing by the applicable Beneficiary State over their persons..." [Doc. No. 69, Ex. A].  This

language constitutes a mandatory forum selection clause.  However, both the Successor Escrow

Agent Indemnification Agreement between the Tribe and BOK, executed April 5, 2006, and the

Supplement to the Successor Escrow Agent Indemnification Agreement of July 19, 2006,

contain language modifying Section 19 of the Escrow Agreement.  Section 2 of the April 5,

2006, agreement mandates arbitration of "[any] disputes, claims, or controversies concerning the

lawfulness or reasonableness of any act, or exercise of any right, concerning the Escrow

Agreement and any other agreements." [*Id.,* Ex. B].  The July 19, 2006 supplement modifies

Section 2 of the April 5, 2006 successor agreement, stating, "[T]he Tribe...may seek judicial

relief from *any court of competent jurisdiction related to state tobacco escrow statutes, including*

*any actions seeking release or return of escrowed funds, dissolution of the escrow, and*

*declaratory judgment, in which BOK may be named as a defendant, without resorting to*

*arbitration*." (emphasis added).  The court concludes the mandatory forum selection clause in

the original Escrow Agreement was modified by the successor agreement and its July 19, 2006

supplement to permit the Tribe to file this suit in federal court; therefore, Section 19 of the

original escrow agreement does not preclude subject matter jurisdiction.

The Tribe has asserted subject matter jurisdiction lies under 28 U.S.C. §§1331 and 1362.

Section 1331 provides:

> The district courts shall have original jurisdiction of all civil actions arising under
> the Constitution, laws, or treaties of the United States.

28 U.S.C. §1331.  Section 1362 provides:

> The district courts shall have original jurisdiction of all civil actions, brought
> by any Indian tribe or band with a governing body duly recognized by the
> Secretary of the Interior, wherein the matter in controversy arises under the
> Constitution, laws, or treaties of the United States.

28 U.S.C. §1362.

The Attorney General argues that even without a mandatory forum selection clause,

subject matter jurisdiction is lacking under these statutes.  Citing *Gila River Indian Community*

*v. Henningson, Durham & Richardson,* 626 F.2d 708 (9th Cir. 1980), and *Mescalero Apache*

*Tribe v. Martinez,* 519 F.2d 479 (10th Cir. 1975), he characterizes the present action as a

contractual dispute and argues no federal laws are implicated.  In *Gila River,* the Indian tribe

sued an architectural firm and building contractor for damages for the negligent design and

construction of a youth center on the Gila River Indian Reservation.  626 F.2d at 709.  The court

found subject matter jurisdiction was lacking because the suit was nothing more than a simple

breach of contract case and did not involve the tribe's "possessory right to land or any rights

granted under any federal treaty or statute."  *Id.* at 714.  Similarly, in *Mescalero,* the tribe sued a

contractor for alleged failure to perform a contract in accordance with the contractor's bid.  519

F.2d at 480.  The court, in ruling subject matter did not exist, concluded  the dispute did not

"arise under" 28 U.S.C. §§1331 or 1362.

In this case, however, the Tribe has not alleged  breach of contract.  Rather, it asserts

defendant's enforcement of the state qualifying statutes violates its federally-assured right of

sovereign immunity [Doc. No. 68, ¶40].  Specifically, the Second Amended Complaint alleges

the statutes at issue  violate the Constitution, Art. I §8, cl.3 [conferring exclusive authority on

Congress to regulate commerce with the Indian Tribes] and Art. II, §2, cl. 2 [giving the

President, with the advice and concurrence of the Senate, power to make treaties]. [Doc. No. 68,

¶7].   The Second Amended Complaint further asserts defendant's attempt to enforce the

Oklahoma statutes violates the Lewiston, Ohio, Treaty of July 20, 1831, the Sandusky River

Treaty of February 28, 1831 and the Buffalo Creek, New York, Treaty of January 15, 1838. [*Id.,*

¶8]–all of which, plaintiff alleges, guarantee the Tribe will not be subject to the laws of the State

of Oklahoma on Tribal Indian Land, the Tribe would be free from interruption or disturbance

from other persons, and the Tribe would be free to administer its own laws.

The complaint in this case asserts rights arising under federal law and treaties.  Federal

courts have subject matter jurisdiction to hear any Tribal claim for protection of rights created by

United States treaty.  *Nez Perce Tribe v. Idaho Power Company,* 847 F.Supp. 791, 795 (D. Id.

1994).   The claim may fail at a later stage for a variety of reasons, but for jurisdictional

purposes, the Tribe has adequately pled a claim giving rising to subject matter jurisdiction under

28 U.S.C. §§1331 and 1362.  *See. Oneida Indian Nation of New York  State v. County of Oneida,*

*New York,* 414 U.S. 661, 675 (1974);; *McCauley v. Makah Indian Tribe,* 128 F.2d 867, 868 (9th

Cir. 1942); *Nez Perce Tribe,* 847 F.Supp. at 795.

### III. Conclusion

For the reasons set forth above, defendant's motion to dismiss [Doc. No. 69] is denied.

ENTERED this 24th day of February, 2009.


Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma

10